# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>          Plaintiff,<br>vs.<br><br>DANIEL WAYNE PHILIP,<br><br>         Defendant. | 3-06-cr-00056-JWS-JDR<br><br>**RECOMMENDATION<br>REGARDING<br>MOTIONS TO DISMISS<br>INDICTMENT**<br><br>(Docket Nos. 22, 25) |

Defendant **Daniel Wayne Philip** has filed two motions to dismiss the

indictment.  Docket Nos. 22 and 25.  The motions are opposed by the government.

Docket No. 32.  The first motion to dismiss raises three issues.  First, that the Fifth

Amendment Due Process Clause precludes the government from relying on the

domestic violence order issued by the Anchorage Superior Court to establish a

violation of 18 U.S.C. § 922(g)(8) as charged in the federal indictment.  Second, that 18 U.S.C. § 922(g)(8) on its face and as applied violates the Tenth Amendment. Third, that the statute on its face and as applied violates Article 1, Sec. 8, Clause 2 (the Commerce Clause) of the United States Constitution.  The Second Motion to Dismiss the Indictment contends that the indictment fails to state a crime under 18 U.S.C. § 922(g)(8).  **For reasons discussed below I conclude that the motions to dismiss (Docket Nos. 22 and 25) lack merit and should be denied.**

## Discussion

### 1.      Whether Indictment Alleges a Crime

Philip seeks dismissal of the indictment on grounds that it fails to state a crime defined by 18 U.S.C. § 922(g)(8).  Count 1 charges that Philip did knowingly possess in or affecting commerce three firearms while subject to a domestic violence restraining order in violation of 18 U.S.C. § § 922(g)(8), and 924(a)(2).  Section 922(g) provides that it shall be unlawful for any person -

> ". . . (8) who is subject to a court order that – (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate; (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child or such intimate partner or person, or

engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and (C)(I) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (9) . . .to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

Philip argues that as a matter of law the uncontroverted facts do not fit the requirements of the federal statute as charged by the government. I disagree.

Whether or not the government can prove the elements of the offense charged generally must await the outcome of the trial. The second motion to dismiss incorporates the facts stated in the defendant's First Motion to Dismiss the Indictment. Attached to the first motion is a transcript of the proceedings of the domestic violence hearing on the motion for long-term protective order before Magistrate Suzanne Cole on January 30, 2006 in the Superior Court for the State of Alaska, Third Judicial District, in a case styled <u>Rebekah Rae Bauer, Petitioner v. Daniel Wayne Philip, Respondent</u>, case number 3AN-06-00086-CI. Under § 922(g)(8) of Title 18 U.S.C., the court order must have been issued after a hearing

at which Philip received actual notice and had an opportunity to participate.  The court order must restrain Philip from harassing, stalking, or threatening "an intimate partner" of Philip or a child of such intimate partner or person, or restrain Philip from engaging in conduct that would place that intimate partner or person in reasonable fear of bodily injury to the partner or a child.  Finally, the terms of the court order must explicitly prohibit the use or attempted use or threatened use of physical force against the "intimate partner" or child that would reasonably be expected to cause bodily injury.

The transcript of the January 30, 2006 proceedings in State Court clearly reflects that Mr. Philip participated in the proceeding and indeed testified at that hearing.  Section 922(8)(A) requires notice of the hearing, not notice of the particular theory of the petitioner or notice necessarily of all of the evidence the petitioner intends to present.  This court cannot conclude as a matter of law that the government cannot meet its burden of proof with respect to § 922(8)(A).

An indictment may be challenged on an issue of law based on the legal sufficiency of uncontested facts.  <u>United States v. Moore</u>, 73 F.3d 666, 668 (6th Cir. 1996).

### 2.    Due Process Claims

Philip argues that the restraining order violated the Fifth Amendment Due Process Clause because he was not advised before the State hearing that his

right to possess weapons in the United States would be an issue at the hearing. Although the restraining order referenced 18 U.S.C. § 922(g), it did not preclude Philip from possessing a firearm, although Rebekah Bauer had requested that such requirement be included in the long term protective order.  *See*  Docket No. 22, Exhibit A, p.10. (Ex Parte Protective Order) and Docket No. 25, Exhibit A, p.3. (Domestic Violence Protective Order Entered 1-30-2006).  The language of the January 30 Order directs that he not threaten or commit acts of domestic violence.

The federal indictment is based upon an alleged violation of federal law, namely the unlawful possession of a firearm by a prohibited person as prescribed in 18 U.S.C. § 922(g)(8).[1]  Prior to the indictment in this case it does not appear that Philip had litigated the issue of whether he is entitled to possess a firearm in light of the domestic violence restraining order.  The defendant has provided no case authority requiring the State Court to warn Philip of collateral consequences of a prohibition of possessing a firearm under federal law.  The Fifth Amendment Due Process Clause does not require such notice be given by the state court nor is the

---

[1] Proof that the defendant possessed a firearm in a state other than the one in which it was manufactured is sufficient to establish an interstate nexus.  United States v. Shambry, 392 F.3d 631 (3rd Cir.) cert. denied 125 S.Ct. 1953 (2004) (possession of firearm by felon); United States v. Clay, 355 F.3d 1281 (11th Cir.), cert. denied 125 S.Ct. 626 (2004); United States v. Polanco, 93 F.3d 555 (9th Cir.), cert. denied 117 S.Ct. 2005 (1996).

federal government required to provide Philip with actual notice of the firearm law before holding him accountable to it.

The federal government is not precluded from relying upon the State restraining order since it meets the requirements of § 922(g)(8) even though the domestic violence hearing and the restraining order did not notify Philip directly of the federal prohibition against possessing a firearm by one who is subject to such court order.  The federal firearm statute provides fair notice to one who is subject to such a court order that it is unlawful to possess in or affecting commerce a firearm and also notice of what the federal law intends to do if that line is crossed.  The publication of the federal statute well in advance of the issuance of the restraining order provides sufficient notice reasonably calculated to apprise interested parties of the proscribed conduct and afford them an opportunity to avoid sanctions for violating the law. *See* for example, <u>United States v. Robinson</u>, 137 F.3d 652 (1st Cir. 1998) (Congress' declaration that possession of child pornography is illegal provided adequate notice to defendant). Where a defendant has been provided notice reasonably calculated to give him actual notice of the law, the due process requirement is satisfied.   The  opportunity to be heard in the instant prosecution satisfies due process of law. Such opportunity need not have been provided in the domestic violence hearing.  The constitutional loss of the right to possess a firearm under federal law is a collateral matter to the domestic restraining order.  The Fifth

3-06-cr-00056-JWS-JDR PHILIP @22 and 25 RR Motions to Dismiss.wpd                                        6

Amendment does not provide Philip with the right to notice of such collateral consequences before the entry of the State protective order.

Philip argues that the evidence was insufficient at the state domestic violence hearing "to sustain a finding that he had committed a crime of domestic violence against Ms. Bauer." The protective order itself states that the finding of the court in this regard is a civil finding based on a preponderance of the evidence and is not a criminal conviction. *See* AS 18.66.100(b) and 18.66.990(3). Even though the restraining order was a civil order not a criminal conviction, Philip received notice of his right to appeal that order in State Court. Prior to the date of the alleged federal violation, May 11, 2006, the restraining order had not been set aside by any court nor was it under judicial review. The sufficiency of the evidence to support the restraining order is not an issue that can be raised before this court in defense of the firearms charge. A review of the record before Magistrate Cole reflects that the Superior Court had jurisdiction over the subject matter as well as respondent Philip, and no jurisdictional defect or invalidity as a matter of law has been argued by Philip. Even if this court were to review the sufficiency of the evidence I would reject Philip's argument in this regard on the merits.

At the State Court hearing Magistrate Cole found credible the testimony of witness Sandra Philip in issuing the domestic violence protective order. Tr. 17. The domestic violence order restrained Daniel Philip from having any direct contact

with Rebekah Bauer.  The court further ordered that Daniel Philip have no contact with Bauer at her place of employment except only as necessary for his own employment.[2]  Further, the court ordered that Mr. Philip not go within five hundred feet of her residence.  Tr. 19.  The domestic violence protective order entered by Magistrate Cole reflects that the court found by a preponderance of the evidence that the relationship between Bauer and Mr. Philip was that of persons who had lived together.  *See* Exhibit A to Memorandum and Support of Second Motion to Dismiss Indictment, p.1.  The order finds that Philip had probably committed the crime involving domestic violence against petitioner Bauer as a civil finding not a criminal conviction.  *Id.*  The order states that Philip had received actual notice of the hearing and was given an opportunity to be heard.  *Id.*  The order directs that Philip not threaten to commit or commit acts of domestic violence, stalking, or harassment. Exhibit A, p.2.  The record reflects in-court distribution of the order to Mr. Philip, Exhibit A, p.6;  Transcript of Proceedings before Magistrate Cole, p.22.[3]  The uncontroverted facts do not preclude the government as a matter of law from proving the elements of 18 U.S.C. § 922(g)(8) as charged in the federal indictment.

---

[2] Mr. Philip testified that he drives a tow truck and occasionally drops cars at Trailer Craft which is Rebekah Bauer's place of employment.  Tr. 19.

[3] The record also reflects that Mr. Philip tore up his copy of the Order before he left the courtroom.  Tr. p.22.

Philip notes that the reach of the Alaska Domestic Violence laws and orders is broader than that of the federal requirements under § 922. He states that a person may obtain a domestic violence order in Alaska without meeting the criteria in § 922(g)(8) which prescribes certain unlawful acts with respect to firearms. Be that as it may, Mr. Philip has not shown as a matter of law that the indictment should be dismissed on grounds that the State restraining order does not fit the requirements of the federal statute.

The defendant's argument that he was denied Due Process before the Superior Court at the January 30, 2006 hearing is based on an assumption that his right to possess a firearm was an issue before the Superior Court. In essence, he is arguing that the federal government's ability to affect his right to possess a firearm required that he receive fair notice and warning of the loss of such limitation at the State Court hearing even though that court was not litigating that issue nor did it have the jurisdiction to confer the right upon him to possess a firearm contrary to the federal statute.

The defendant further argues that the United States may not base a criminal sanction on a civil order which violated Due Process. As discussed above the defendant has not prevailed in showing that the civil order violated due process. He has not shown that the domestic violence hearing was fundamentally unfair. Thus, the defendant's reliance upon United States v. Mendoza-Lopez, 481 U.S. 828

(1987) is misplaced.  There, the defendants were charged with unlawful reentry after deportation in violation of 8 U.S.C. § 1326.  They contended that their deportation hearing was fundamentally unfair because the immigration judge failed to adequately explain their right to apply for suspension of deportation and their right to appeal from an adverse ruling on the request for a suspension of deportation.  *Id.* at 832.  The federal courts were unanimous in holding that the underlying deportation orders could not be used to prove an 8 U.S.C. § 1326 unlawful reentry violations.  Philip has not shown that his domestic violence hearing lacked due process; Mendoza-Lopez is not analogous to his case.

The January 6, 2006 domestic violence hearing was not held ex parte as stated by the defendant in his brief.  The ex parte protective order merely preserved the status quo until the January 30, 2006 hearing could be held.  The federal indictment is based upon an alleged violation occurring after the January 30 hearing and the domestic violence protective order was entered.  The prosecution is not based upon a violation of the firearms statute during the pendency of the ex parte protective order.  However, the ex parte protective order and its findings served to provide notice to Philip of the nature and issues that would be addressed at the January 30 hearing.  Mr. Philip was served a copy of the ex parte order.  *See* Memorandum in Support of First Motion to Dismiss Indictment, Exhibit A, p.6.  That ex parte order also provided notice as follows: "Either party may ask the court to

change or end this order.  A form for making this request (Form DV135) is available at the court clerk's office." *Id.*  Significantly the ex parte order also notified Philip that petitioner Bauer was requesting the court to direct him (Philip) not to use or possess a firearm.  Exhibit A, p.10.  I conclude that Philip was given adequate notice of his rights to be affected at the domestic violence hearing for purposes of this federal prosecution.

Mr. Philip argues that Magistrate Cole refused to hear from his witness Denise Stewart.  The magistrate ruled that the hearing before the court did not address an alleged assault upon Denise "or whatever happened with Denise." Tr. p.12.  Mr. Philip advised the magistrate that he had a witness present who had been there the day of the alleged threat.  Tr. p.14.  The court clarified for the record that Denise had not been present on the telephone.  Tr. 16.  It appeared from this proffer that the witness had been in a cul-de-sac not on the telephone where the threat was allegedly made.  Thus, Magistrate Cole disallowed the testimony of Brian Eisen because it did not appear that he could address the probable cause issue of whether the telephonic threat had been made.   Regardless of whether the State Magistrate ruled correctly on the evidentiary matter, for purposes of Due Process Mr. Philip was afforded his right to be heard at a meaningful time and in a meaningful manner at the hearing.  Due process does not require that the court render only legally sustainable rulings in its admission of evidence.  The question is whether

procedural Due Process was afforded not whether the federal court would reach the same conclusion as the state court on the record presented.

The mere issuance of a protective order or that it may be enforced by the state court does not necessarily bring it within the scope of 18 U.S.C. § 922(g). United States v. Spruill, 292 F.3d 207, 218 (5th Cir. 2002) (TRO issued without notice to defendant could not form basis for a § 922(g)(8) charge. In the instant case, however, actual notice was given to Philip by first serving him with an ex parte restraining order. He appeared at a scheduled hearing where the presiding magistrate was prepared to listen to both sides of the dispute and decide the matter impartially. The no contact order entered January 30, 2006 was within the purview of § 922(g)(8). United States v. Banks, 339 F.3d 267, 271 (5th Cir. 2003). The January 30, 2006 hearing was not the first time Philip was advised that a protective order might issue. The State Court entered a preliminary ex parte protective order against Philip pm January 6, 2006.

At the January 30 hearing Philip was allowed to present reasons as to why the order should not be entered. The issue of a no contact order was considered at that hearing. Philip's argument is contrary to the Ninth Circuit's interpretation of what constitutes notice in a criminal context. See United States v. Williams, 291 F.3d 1180, 1192-1193 (9th Cir. 2002).

Philip argues that the federal statute does not include "former partners" within the reach of the category of an "intimate partner" as described in § 922(g)(8)(B).  Philip argues that the definition of "intimate partner" in § 922(g)(8) violates due process if it includes persons who have lived together or who have only had a dating relationship.

The defendant has not provided case authority in support of this argument.  The term "intimate partner" within the meaning of 18 U.S.C. § 922 is defined to mean "With respect to a person, the spouse of the person, a former spouse of the person, an individual who is a parent of a child of the person, and an individual who cohabitates or has cohabited with the person."  18 U.S.C. § 921(32).

Whether Rebekah Bauer constitutes a "intimate partner" for purposes of 18 U.S.C. § 922(g)(8) presents a mixed question of law and fact.  The government does not contend that Bauer was a "current" intimate partner nor is that an element of the federal offense.    At the hearing before Magistrate Cole Ms. Bauer testified that she had "split up" with Daniel at the end of July or early August [2005] and the police were called to the residence while she was gathering her belongings on August 4.  Tr. 4-5.  The record sufficiently reflects facts upon which a fact-finder could conclude that Ms. Bower was or had been an intimate partner of Mr. Philip. Section 922(g)(8) does not require that the restraining order against threatening an

intimate partner be limited to one who is a current intimate partner of the respondent.[4]

Section 922(g)(8) does not require a criminal conviction and applies to domestic restraining orders where the person restrained places an intimate partner in reasonable fear of bodily injury to the partner or a child. The protective order finds that Philip represents a credible threat to the physical safety of the petitioner or a minor child in the care of the petitioner (Rebekah Bauer) citing 18 U.S.C. § 922(g)(8)(C)(1). Exhibit A to the Second Motion to Dismiss Indictment, p.1.

### 3. Tenth Amendment Argument

The defendant argues that 18 U.S.C. § 922(g)(8) violates the Tenth Amendment to the U.S. Constitution by frustrating the State of Alaska's right to regulate its citizens "on matters of strictly local concern." Philip argues that the regulation of domestic relations is a matter left by the Constitution to the States.

The federal prosecution is based on a gun control statute not a domestic relations statute. The court disagrees with the defendant's argument that § 922(g) "substantially interferes" with the State of Alaska's ability to carry out its traditional functions in the area of domestic relations. To the contrary the federal law seems consistent with the intent of Alaska's domestic violence laws prescribing threats of bodily injury to the violator's intimate partner.

---

[4] Nor does Alaska Statute 18.66.990(5) so limit its application.

The defendant makes the argument that § 922(g)(8) has a direct chilling effect on the issuance of protective orders by state court judges.  He argues that state judicial officers may choose not to issue protective orders because of the application of the federal gun law in certain situations, such as where the respondent is a member of the National Guard or a police officer.  This argument ignores the ability of the Superior Court to tailor it's protective order to each respondent.  Mr. Philip was not asking as a National Guardsman nor was he a law enforcement officer.  Thus, in his case, the chilling effect is minuscule if not non-existent.

Philip also argues that § 922(g)(8) violates the Tenth Amendment because it criminalizes what might otherwise be legal activity under state law. Philips cites <u>Printz v. United States</u>, 521 U.S. 898, 117 S. Ct. 1365 (1997) in support of its Tenth Amendment argument.  In <u>Printz</u> the court did not address the authority of Congress to pass laws requiring or prohibiting certain acts; rather it addressed whether the Necessary and Proper Clause (Art 1, Sec 8, Clauses 3, 18) allowed Congress to directly compel the states to require or prohibit those acts.  At issue was the obligation to conduct background checks on prospective hand gun purchasers. The Supreme Court ruled that the federal government may not compel states to implement by legislation or executive action federal regulatory programs.

It is indisputable that the Constitution establishes a system of duel sovereignty.  Justice Scalia's opinion in <u>Printz</u> discusses this duel sovereignty.  The

opinion notes that "the Framers explicitly chose a Constitution that confers upon Congress the power to regulate individuals, not States."  521 U.S. at 920 citing New York v. United States, 505 U.S. 166 (1992).  The instant case is not one in which the federal government is requiring state officers to execute its laws.  Section 922(g)(8) essentially provides that any order of a court of competent jurisdiction which enters a restraining order meeting the requirements of § 922(g)(8) may form the basis for a prohibition against possession of a firearm.  The statute does not require the court order to have been issued by a state court.   Nor does the statute address the manner in which a state may issue such restraining order to meet the elements of § 922(g)(8).

In New York v. United States, supra, also cited by Philip, the Supreme Court held that requiring states to accept ownership of certain waste, or regulate the interstate market in radioactive waste disposal according to instructions of Congress falls outside Congress' enumerated powers and is inconsistent with the Tenth Amendment.  The case is not analogous to the instant prosecution.  The pertinent provision of the firearms statute does not limit the States ability to resolve domestic disputes nor does it direct the States in how it might regulate the application of domestic relations laws.  In short, the federal statute does not invade the territory of the State and does not constitute a violation of the Tenth Amendment.  See United States v. Meade, 175 F.3d 215 (1st Cir. 1999) wherein the court denied a challenge

to the constitutionality of 18 U.S.C. § 922(g)(8) and 18 U.S.C. § 922(g)(9).  Meade appealed his conviction of possession of a firearm predicated upon a judicial anti-harassment order and misdemeanor crime of domestic violence as predicate conduct.

The Tenth Amendment reserves to the States all powers not vested by the Constitution in the federal sovereign.  Printz, supra.  When Congress properly acts pursuant to one of its enumerated powers its work product does not offend the Tenth Amendment.   Gregory v. Ashcroft, 501 U.S. 452, 460 (1991).   The government contends that the pertinent section was properly enacted under Congress' regulatory power under the Commerce Clause, U.S. Constitution, Article I, Sec. 8, Clause 3.  Philip challenges this contention.  As in Meade, supra, Philip contends that § 922(g)(8) in and of itself represents an undue imposition on the state sovereignty thereby running afoul of the Tenth Amendment.  The Meade court correctly concluded that that section does not in any way intrude upon state court proceedings or the authority of a State or its agents to administer their domestic relations laws in the manner they see fit.  175 F.3d at 225.  Section 922(g)(8) simply makes the existence of a (State) court order an element of a federal firearm possession offense.

I agree with Meade that § 922(g)(8) is totally devoid of Tenth Amendment implications.  See Bongiorno, 106 F.3d 1027, 1033-34 (1st Cir. 1997)

holding that the Federal Child Support Recovery Act did not violate the Tenth Amendment because it came "into play only after a state court issue[d] a child support order."  *See*  also <u>United States v. Minnick</u>, 949 F.2d 8 (1st Cir. 1991), <u>cert</u>. <u>denied</u> 112 S.Ct. 1698 (federal statute outlawing felons possession of firearms did not implicate States integrity and thereby violate Tenth Amendment).

### 4.    Commerce Clause

Philip argues that § 922(g)(8) represents an unconstitutional exercise of Congress' power under the Commerce Clause for two reasons.  First, he contends that the conduct it outlaws did not substantially affect interstate commerce.  Secondly, he argues that § 922(g)(8) as applied in this case transforms the Commerce Clause into a general police power.

Philip argues that the statute is unconstitutional because it does not require state judges fully to include federal law ramifications in their restraining orders in domestic proceedings.  Section 922(g)(8) provides adequate notice of the prescribed conduct and the effective class of persons.  There is no indication that Congress intended § 922(g)(8) to include a *mens rea* requirement of actual knowledge of the law.  The "knowing" standard of culpability employed in 18 U.S.C. § 924(a)(2) signifies that the government need prove only that the defendant knew of the facts comprising the offense, and nothing more.  *See* <u>Bryan v. United States</u>, 524 U.S. 184, 118 S.Ct. 1939, 1945-46 (1998).  Notice in the constitutional sense

is customarily satisfied when a law explains with sufficient clarity the conduct that it purports to criminalize.  *See*  Bouie v. City of Columbia, 378 U.S. 347, 350-51 (1964).

Philip contends that § 922(g)(8) unconstitutionally transforms the commerce clause into a general police power.  He reasons that because the State of Alaska has an ongoing investigation following his arrest on May 11, 2006 based on reports of an assault or weapons misconduct at his home, then the federal prosecutor should be barred from pursuing federal prosecution of him under the gun statute based upon the same set of circumstances.

It is clear that both the State of Alaska and the United States have authority to prosecute an individual for similar conduct.  Conviction by one of those jurisdictions does not usually bar prosecution by the other.  No issue of double jeopardy is presented in this case.  No claim has been made by the defendant that the United States is prohibited from using any evidence derived from the defendant's arrest by Anchorage police on May 11, 2006 solely because the State of Alaska may be conducting its own investigation.  The federal statute's legislative history reflects that the legislation's chief sponsor noted that "convictions for domestic violence-related crimes often are for crimes, such as assault, that are not explicitly identified as related to domestic violence."  142 Cong. Rec. S11878 (1996). (Statement of Sen. Lautenberg).

Although Philip raises the issue of whether the federal statute unconstitutionally transforms the Commerce Clause into a general police power, he offers little or no support for this argument.  Instead he argues that the facts of his case are essentially self-evident.  Such is not the case.  Congress is not required to avoid legislation in areas of duel interests to the states and the federal government such as the regulation of firearms.  The fact that the federal law incorporates a predicate offense concept is not tantamount to usurpation of general police powers reserved to the states.

For the foregoing reasons the Motions to Dismiss, Docket Nos. 22 and 25 should be denied.  IT IS SO RECOMMENDED.

DATED this 28th day of August, 2006, at Anchorage, Alaska.


 /s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge


Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **NOON, Friday, September 1, 2006**, to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal.  McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981).  The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's

RR @22 & 25 Re Motions to Dismiss
Signed by Judge John D. Roberts

objection to a magistrate judge's recommendation <u>United States v. Howell</u>, 231 F.3d 615 (9th Cir. 2000).  Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers.  Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support.  Response(s) to the objections shall be filed on or before **NOON, Thursday, September 7, 2006**.  The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders.  Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment.  <u>See</u> <u>Hilliard v. Kincheloe</u>, 796 F.2d 308 (9th Cir. 1986).